IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CATHY HAMILTON GRIMES,           :

    Plaintiff,                                :

vs.                                              :        CA 14-0373-C

CAROLYN W. COLVIN,           :
Acting Commissioner of Social Security,
                                                           :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S. C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*Compare* Doc. 28 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.") *with* Doc. 29 (endorsed order referring this matter to the undersigned for all proceedings).) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 28 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for
(Continued)

Plaintiff alleges disability due to obesity, osteoarthritis, plantar warts/callosity, chronic pain syndrome, a learning disability, and anxiety disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. **The claimant has not engaged in substantial gainful activity since March 26, 2012, the application date (20 CFR 416.971 *et seq.*).**
>
> 2. **The claimant has the following severe impairments: obesity, osteoarthritis, pain disorder, learning disability, and anxiety disorder (20 CFR 416.920(c)).**
>
> . . .
>
> 3. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. She drives and has an active driver's license. She has no problem with her personal hygiene matters. She can do laundry and maintain her household chores, prepare simple meals, and shop for the things she needs.

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

In social functioning, the claimant has mild difficulties. She lives in an apartment with her adult son. She has been married twice and has four adult children. . . . She attends church regularly, goes swimming, and to the park. She gets along well with authority figures but has been fired fr not getting along with others.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. She watches television, can pay bills, count change, use checkbooks or money orders, and handles a savings account. She can drive and pay attention at church.

As for episodes of decompensation, the claimant has experienced one or two episodes of decompensation, each of extended duration. The claimant denied any psychiatric hospitalizations other than a single commitment to Altapointe in 2011.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The "paragraph C" criteria of 12.06 is not met because there is no medical evidence showing the claimant has a complete inability to function independently outside the home.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced level of medium work as defined in 20 CFR 416.967(c). She can understand, remember, and carry out short simple instructions on an unlimited basis and detailed instructions occasionally. She has [] no [social] interaction limitations or adaptation limitations. She is precluded from climbing ladders, ropes, or scaffolds. She is precluded from crawling. She can occasionally stoop, kneel, or crouch. She can continuously reach, handle, finger, or feel.**

. . .

The claimant alleges that she cannot work because she is in pain all the time. She testified that she cannot stand for long because her feet hurt and her back hurts. She testified that her hands hurt and her arm goes numb. She testified that she was committed to Altapointe because she got into an altercation with someone else at a homeless shelter.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant has the severe physical impairments of obesity and osteoarthritis. Both impairments are accommodated in her residual functional capacity in that she is precluded from all very heavy and heavy work in the national economy and she is precluded from climbing ladders, ropes, or scaffolds and from crawling. She can occasionally stoop, kneel, or crouch. She can continuously reach, handle, finger, or feel.

The claimant testified that she is 5'2" and currently weighs 196 pounds. Her medical records from Mobile County Health Department from May 6, 2010, state that she was five feet tall and weighed 188 pounds with a body mass index (BMI) of 36.8. She was down from 196 pounds on March 22, 2010. In March of 2012, she was reported to be 5'0" and weigh 172 pounds with a BMI of 33.66. The last half of 2012 and the first part of 2013, the claimant's weight ranged from 186 to 201 pounds. The claimant has consistently been shown to be obese; however, no surgical intervention, diet medication, or other treatments have been prescribed or recommended. Even so, her obesity is accommodated in her residual functional capacity.

The claimant has the severe impairment of osteoarthritis; however, medical treatment notes from Tri-County Medical Center [i]n February, March, and July of 2012 state that she has a normal range of motion, no joint tenderness, no joint swelling, normal straight leg raises, and no calf tenderness. She was diagnosed with osteoarthritis in 2010 due to pain in her knee joints. Range of motion testing performed in January, February, March, June and July of 2011 and every month from August of 2012 through May of 2013 showed the claimant to have normal range of motion in the knees and the other joints, no swelling and a normal gait. X-rays done on July 28, 2011 showed no acute abnormality in the knees, no significant degenerative disc disease, minimal degenerative disease in the right hand and a chronic calcification in the left wrist joint. Nonetheless, the claimant's osteoarthritis is accommodated in the claimant's residual functional capacity as noted above.

On April 3, 2013, Alan Sherman, M.D., performed a consultative medical exam and review of the claimant. Dr. Sherman performed a clinical exam that showed her fine motor movement normal bilaterally, normal range of motion in the wrists, elbows and shoulders, bilaterally with no complaints of pain, and upper extremity strength of 5 of 5. She also has had normal range of motion of her ankles, knees and hips, bilaterally, straight leg raise was negative and lower extremity strength was 5 of 5. The claimant denied any back pain whatsoever during the exam and range of motion testing done on the back proved to be completely normal with no altered gait or speed. Dr. Sherman opined that the claimant has "few physical limitations that would preclude gainful employment.["] Great weight is assigned to Dr. Sherman's physical opinion. He is very credible as a non-treating source. His opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record and the claimant's treatment history.

The claimant has the severe mental impairments of anxiety, chronic pain syndrome, and learning disability. Her severe mental impairments are accommodated in her residual functional capacity in that she is precluded from all very heavy and heavy work in the national economy and she is expected to only understand, remember, and carry out short simple instructions on an unlimited basis and detailed instructions occasionally.

The claimant was involved in an altercation at a homeless shelter on March 25, 2012. She was later committed to Altapointe Health Systems due to psychiatric problems based upon a petition filed in Probate Court. Her initial diagnoses at Altapointe were psychosis and anxiety disorder. She reported that she had never been admitted to any psychiatric institution before though she had been on anti-depressants sometime in the distant past. She was admitted to Baypointe Hospital for monitoring due to her unpredictable behavior and placed on Klonopin for treatment.

The claimant was consistently treated at Altapointe Health Systems from April of 2012 until August of 2012. After two months of treatment, on May 31, 2012, her memory and concentration were found to be unimpaired and no symptoms of anxiety were noted throughout the claimant's remaining treatment at Altapointe. The claimant reported no symptoms of depression or any other problems. In her consultative medical exam, on August 20, 2012, the claimant reported that her only mental problem was a history of anxiety.

In January of 2012, the claimant was prescribed Lortab for treatment of chronic pain and Xanax for anxiety treatment. She complains regularly of pain and is generally prescribed Lortab for treatment though no diagnostic testing has shown any basis for the pain. In her consultative medical exam, Dr. Sherman diagnosed the claimant with chronic pain syndrome.

The claimant was seen at Southwest Alabama Behavioral Health Care Systems on November 15, 2012 for psychiatric treatment and recommendations were made for various evaluations. Apparently, she did not follow through with the recommendations. She next reported to Southwest Alabama Behavioral Health Care Systems on February 26, 2013 and reported that she had not been on her medication in three or four months and would like to get back on them because they help her to be "more calm". She was evaluated by John Cranton, M.D., at the visit. Based on her evaluation, Dr. Cranton opined that the claimant appears to have anxiety issues and a learning disability. He noted that she dropped out of school in the seventh grade and had difficulty with the computational portions of his clinical evaluation. He further opined that she did not have any signs of depression, is probably not schizophrenic, and does not appear to have any adverse reaction to the medications previously prescribed. Dr. Cranton prescribed Haldol monthly; Cogentin, and Trazadone and recommended psychological testing. Significant weight is assigned to the opinion of Dr. Cranton. As a treating physician, his opinion is very credible. His opinion is consistent with the claimant's treatment history, the diagnostic testing contained in the record[,] and with the other substantial evidence in the record.

The claimant was given a Multiphasic Personality Inventory-Second Addition (MMPI-2) on May 31, 2013 at Southwest Alabama Behavioral Health Care Systems. The results of the exam proved to be invalid. The psychologist that administered the exam, Jill Hall, Ph.D., noted that the claimant's results may have been invalid due to an inability to understand the questions or in an attempt to over or under report her symptoms. No weight is assigned to the test or speculation made by Dr. Hall due to the clinically invalid results of the administered test; however, the claimant's credibility is not enhanced by producing the invalid test.

The claimant's credibility regarding her mental impairments is greatly diminished by her lack of treatment and lack of following through with recommendations made by her treating physicians. She was without any medication at all for several months and only showed signs of anxiety when she finally reappeared for treatment. As noted above, she even reported only anxiety as a mental health issue in her medical evaluation. The claimant's mental impairments are fully accommodated in her residual functional capacity as stated above.

The claimant had a consultative mental evaluation on October 9, 2012 performed by Robert DeFrancisco, Ph.D. Upon clinical evaluation, Dr. DeFrancisco opined that the claimant has a pain-disorder, substance-abuse in remission, probably borderline to average intelligence and a learning disability. He opined that she can understand, remember and carry out instructions that are within her ability and respond adequately to coworkers. Five months later, on March 21, 2013, the claimant hired Dr. DeFrancisco to reevaluate her. In the reevaluation, Dr. DeFrancisco

changes his diagnoses completely. He opined that she has a personality disorder with self-defeating tendencies and an anxiety disorder along with major depression. He opined that she is in need of intense psychotherapy and pharmacotherapy and has marked restrictions in her ability to function. No weight is assigned to the opinions expressed by DeFrancisco. The opinions are inconsistent with the claimant's treatment history, her own reports, the other clinical testing in the record and even internally inconsistent. Dr. DeFrancisco noted that the claimant has low normal concentration in the narrative portion of the evaluation then indicated that she had a marked restriction in the form for her mental residual functional capacity. He indicated in the form that she has marked history of decompensation in work setting but no examples or history of decompensation in a work setting are contained in the record or in his narrative history. The only episode of decompensation in the record is the commitment to Baypointe in March of 2012 after the altercation at the homeless shelter. Dr. DeFrancisco gave the claimant a marked restriction of activities of daily living; however, the claimant wrote in her Function Report and the claimant's mother wrote in her function report that the claimant has almost no restrictions in her activities of daily living. The marked restriction[s] in social functioning [are] also internally inconsistent because a mere moderate restriction was placed on the claimant's ability [to] respond appropriately to supervision.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and the claimant's subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on the claimant's capacities that were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

**5.    The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**

The position of cashier is described in the *Dictionary of Occupational Titles* at 211.462-010. The job is performed at the light exertional level and is unskilled. It requires frequent reaching, handling, fingering, talking, hearing, and near acuity. She performed the position beyond the level required to reach substantial gainful activity at various places during her career for more than enough time to learn the job.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. She is capable of performing light work as she is limited only to the medium exertional level. She can understand, remember, and carry out short simple instructions on an unlimited basis and detailed instructions occasionally.

7

> She has no social interaction limitations or adaptation limitations. She can continually reach, handle, finger, or feel. The only additional limitations that she has are preclusion from climbing ladders, ropes, or scaffolds, and crawling and being limited to only occasionally stooping, kneeling, or crouching. These precluded activities are not requirements of the position of cashier as described in the *Dictionary of Occupational Titles*.
>
> **6.    The claimant has not been under a disability, as defined in the Social Security Act, since March 26, 2012, the date the application was filed (20 CFR 416.920(f)).**

(Tr. 13, 14-15, 15, 15-16, 16 & 16-20 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

A claimant is entitled to an award of supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a) (2014). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities, she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments

prevent her from performing her past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she is capable of performing her past relevant work as a cashier, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).

Although the plaintiff's brief is a bit disjointed (*see* Doc. 19), the Court considers Grimes to be offering two reasons why the Commissioner's decision to deny her supplemental security income benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ accorded improper weight to the various doctors' evaluations/examinations contained in the record and/or erred in failing to obtain a consultative psychological examination in light of his rejection of the evaluations of Dr. Robert DeFrancisco; and (2) the ALJ's residual functional capacity determination and finding that claimant can perform her past relevant work as a cashier is not supported by substantial evidence because of the ALJ's failure to consider relevant evidence and testimony of record.

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**A.     RFC Determination and Plaintiff's Ability to Perform her Past Relevant Work as a Cashier**.  Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). And, of course, it is clear that the ALJ's RFC determination is as important at the fourth step of the sequential evaluation process as it is at the fifth. *See Phillips v. Barnhart,* 357 F.3d 1232, 1238-1239 (11th Cir. 2004) ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her

11

impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)). In this case, the ALJ made the following RFC determination: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced level of medium work as defined in 20 CFR 416.967(c). She can understand, remember, and carry out short simple instructions on an unlimited basis and detailed instructions occasionally. She has [] no [social] interaction limitations or adaptation limitations. She is precluded from climbing ladders, ropes, or scaffolds. She is precluded from crawling. She can occasionally stoop, kneel, or crouch. She can continuously reach, handle, finger, or feel.**" (Tr. 15-16 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other

requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[5]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6]

In this case, the undersigned cannot find that the ALJ has provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision. The ALJ specifically determined that plaintiff is capable of performing a "**reduced range of medium work as defined in 20 CFR 416.967(c).**" (Tr. 15.) That section of the Commissioner's

---

[5] In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[6] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

13

regulations defines medium work as requiring "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds[,]" *id.* and it is clear that medium work requires prolonged standing, *see* SSR 83-10 ("In most medium jobs, being on one's feet for most of the workday is critical."). Although the ALJ notes in a conclusory manner that his RFC determination accommodates plaintiff's severe physical impairments "of obesity and osteoarthritis[]"(*see* Tr. 16), this Court cannot find substantial evidence in the record supporting that RFC determination in light of the ALJ's wholesale failure to mention, much less consider, the evidence in the record regarding the morbidly obese plaintiff's numerous plantar warts on both feet, including one doctor's repeated suggestion that she was in need of surgery (*see, e.g.*, Tr. 291-305, 312, 351-352, 355 & 368), and plaintiff's testimony that the warts on her feet are a big and painful problem and make it impossible for her to stand for prolonged periods (*see* Tr. 30-31, 33-34 & 41-42). Since the ALJ totally ignored the evidence of record relative to plaintiff's plantar warts, as well as her testimony regarding that condition (whether plantar "feet" or plantar warts), he obviously failed to set forth explicit and adequate reasons for questioning Grimes' testimony that she cannot stand for prolonged periods because of her plantar warts. Accordingly, the Court must accept plaintiff's testimony in this regard as true, *see Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) ("Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true."), and since the truth of such testimony cannot be reconciled with the ability to perform the physical requirements of medium work,[7] this case need be remanded for further proceedings not inconsistent with this decision.[8]

---

[7] Although the ALJ noted in a conclusory manner that "no diagnostic testing has (Continued)

On remand, the ALJ should also more specifically explain how plaintiff's mental impairments still allow her to "occasionally" understand, remember, and carry out detailed instructions (*see* Tr. 15), given the evidence or record relied upon by the ALJ in denying the claimant benefit (*compare, e.g.,* Tr. 373 ("She is adequately oriented, but she does appear to have difficulty with recall. She was able to remember that I am a psychiatrist but she could not recall my name even though I wrote it down on a piece of paper. Her intellectual functioning appears to be impaired. She subtracted serials seven very slowly. She could not multiply. She was not able to abstract proverbs."); and Tr. 329 (memory and concentration were noted to be impaired) *with* Tr. 212 (mother's report that plaintiff "does not take instructions well")).

Because substantial evidence of record fails to support the Commissioner's determination that Grimes can perform the physical and mental requirements of medium work as identified by the ALJ (*see* Tr. 15-16), the Commissioner's fourth-step determination is due to be reversed and remanded for further consideration not inconsistent with this decision. *See Land v. Commissioner of Social Security,* 494 Fed.Appx.

---

shown any basis for the pain[]" plaintiff complained of during the hearing (*see* Tr. 18), this Court simply observes that plaintiff's plantar warts are patently apparent and no physician who examined plaintiff has given the slightest indication that those warts would not be painful (to stand or walk on) or cause pain (*see, e.g.,* Tr. 317).

8    The undersigned recognizes that when Dr. Alan Sherman examined plaintiff on August 20, 2012, he noted that "[g]iven ROM there are few physical limitations that would preclude gainful employment." (Tr. 317.) However, this comment has no impact on plaintiff's testimony regarding her feet and plantar warts and, in truth, the undersigned questions whether the "few physical limitations" to which Dr. Sherman made implicit reference relate to plaintiff's plantar warts. Certainly, Dr. Sherman did not question that plaintiff was being treated for plantar warts (*see* Tr. 315 ("She also is currently being treated for bilateral foot plantar warts which she states increases pain.")) or that the warts are painful (*compare id. with* Tr. 317 ("CHRONIC PAIN SYNDROME PER MEDICAL RECORDS")). And since Dr. Sherman makes no direct notation that he examined the warts and found that they would not cause any physical limitations, Dr. Sherman's examination notes simply are not contradictory of plaintiff's testimony that her plantar warts prohibit her from engaging in prolonged standing.

47, 49 & 50 (11th Cir. Oct. 26, 2012) ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable of performing 'past relevant work.' . . . A claimant's RFC takes into account both physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.").

    B. **Weight Afforded the Opinions of the Various Examining Physicians.** Because this case is due to be remanded for further proceedings for those reasons previously identified, this Court has no reason to address this assignment of error at any length. However, the undersigned would simply note that given the objections raised by the plaintiff, reconsideration of whether to obtain a detailed psychological evaluation of the claimant on remand may be appropriate.

## CONCLUSION

  In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

  **DONE** and **ORDERED** this the 3rd day of June, 2015.

            s/WILLIAM E. CASSADY
            **UNITED STATES MAGISTRATE JUDGE**